## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

Brandon J. Charlotten,

                      Plaintiff,

        v.                                   9:24-CV-1491
                                            (DNH/MJK)

Bryan Hilton,
Superintendent of Midstate Correctional Facility

                    Defendant.

_____

Brandon J. Charlotten, Petitioner, *pro se*
Priscilla Steward, Esq., Asst. Attorney General, for Respondent

Mitchell J. Katz, U.S. Magistrate Judge

To Honorable David N. Hurd, Senior U.S. District Judge:

## ORDER & REPORT-RECOMMENDATION

Senior United States District Court Judge David N. Hurd referred Respondent's motion to dismiss to this Court for a report and recommendation.[1] Respondent argues that Charlotten's habeas petition ("Petition") should be dismissed because he failed to exhaust the state court remedies available to him. (Dkt. 12). Charlotten responded, and Respondent did not reply. (Dkt. 14). For the reasons below, the Court

_____

[1] The District Court has the authority to refer dispositive motions to this Court under 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

recommends the District Court grant Respondent's motion and dismiss Charlotten's Petition without prejudice.

## I.     BACKGROUND

### A. Charlotten's guilty plea and sentencing.

On September 16, 2021, a Chenango County grand jury indicted Charlotten on one count of Third-Degree Arson (Penal Law §150.10(1)) and two counts of First-Degree Criminal Contempt (Penal Law §215.51(b)(iii), (iv)). *See* (SR. 1-5).[2]

On May 5, 2023, Charlotten appeared by counsel and pled guilty to a 2-6 year indeterminate prison sentence on the arson count and a 2 year determinate prison sentence followed by 2 years of post-release supervision on the assault count. (SR. 13-45). The sentences ran consecutively. (SR. 15). In exchange for the guilty plea, Charlotten waived his trial and appellate rights. (SR. 23). During the hearing, counsel noted—on the record—that he advised Charlotten to accept the plea agreement because the proposed sentence was less than the minimum sentence Charlotten would face if convicted at trial on the

---

[2] Citations to the State Record will be identified as "SR."

arson count. *See* (SR. 17). The plea agreement also resolved charges

pending in Town of Norwich Court. (SR. 16).

On July 14, 2023, Charlotten appeared with counsel for

sentencing. (SR. 46-56). At that time, the parties discussed Charlotten's

eligibility for credit for the time he served prior to his plea and

sentencing. *See* (SR. 52). Finally, the Chenango County Court imposed

the promised sentence. (SR. 53-54).

### B. Charlotten's C.P.L. 440 motion.

On July 30, 2024, Charlotten filed a C.P.L. § 440.10 motion in

state court. (SR. 59-63). Relevantly, Charlotten argued that he has not

received the 576 days of time-served credit, and he should receive 330

additional days of time-served credit against his assault sentence. (SR.

63); *see also* (Dkt. 1, at 2).

In response, the prosecution submitted an affirmation stating,

among other things, that Charlotten has been credited with 576 days of

time-served credit. (SR. 112, 115). The time-served credit Charlotten

received was subtracted from his aggregate sentence and the

prosecution provided documentary evidence to support that attestation.

*See* (*Id.*).

On October 28, 2024, Charlotten's counsel withdrew the C.P.L. § 440.10 motion. (SR. 117-120). Specifically, Counsel noted his belief that Charlotten's affidavit "falls as insufficient in terms of the specific motion, so, . . . on those grounds alone" he withdrew the motion and reached "out to Mr. Charlotten to explain the process, what happened, and discuss the next possible steps in [his] case." *See* (SR. 119).

### C. Charlotten's Petition.

On November 25, 2024, Charlotten petitioned this Court for habeas relief. *See* (Habeas Petition, Dkt. 1). In his petition, Charlotten argued that he did not receive time credit for his pre-plea and pre-sentencing incarceration. (Habeas Petition, Dkt. 1, at 2). With his petition, Charlotten submitted an October 28, 2024 letter, from counsel, that detailed the C.P.L § 440.10 motion conference. *See* (Dkt. 1-2, at 3). In the letter, counsel confirmed that the state trial court credited Charlotten 576 days for the arson charge. *Id.* Counsel also noted that because the two sentences run consecutively, Charlotten would not also receive time credit for the assault charge. *Id.* Finally, Counsel noted that the prosecution would have offered a higher sentence or gone to

trial on all charges—including those that were dismissed as part of the plea agreement—if the C.P.L § 440.10 motion was granted. *Id.*

On June 13, 2025, Respondent moved for permission to file a motion to dismiss Charlotten's Petition. (Dkt. 12). Respondent only argued Charlotten failed to exhaust his state court remedies. *See* (Dkt. 12). The motion was granted. *See* (Dkt. 13).

Nearly a month later, Charlotten responded. *See* (Dkt. 14). In his response, Charlotten argued that counsel was ineffective because counsel withdrew the C.P.L § 440.10 motion without his knowledge or request. (Dkt. 14). Charlotten also argues that he "exhaust[ed] all state court remedies known to him from his limited knowledge." *Id.*

## II.  APPLICABLE LAW

### A.  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *See also Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court." *Id.* at 182 (cleaned up). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fair-minded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

## III.  DISCUSSION

### A. The District Court should dismiss Charlotten's Petition because he did not exhaust all state Court remedies.

The District Court should dismiss Charlotten's habeas petition. AEDPA requires incarcerated persons challenging their state court convictions to exhaust the state court process. Here, Charlotten has not done so. As a result, this Court recommends denying Charlotten's habeas petition.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (cleaned up); *see also* 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (cleaned up); Indeed, "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005) (cleaned up).

Where a petitioner has been convicted in a New York state court, they may exhaust their federal claims by challenging their conviction

and presenting the federal claim on direct appeal to the Appellate Division, and then by seeking leave to appeal to the New York Court of Appeals. *See Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Where a claim is not appropriate for direct appeal because it cannot be demonstrated on the basis of the pretrial or trial record, a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, typically in a motion made pursuant to Section 440 of the New York Criminal Procedure Law. *See Reyes v. Phillips*, No. 02-CV-7319, 2005 WL 475544, at *4 (S.D.N.Y. Mar. 1, 2005) ("[A] motion under N.Y. Crim. Proc. Law § 440.10 was the appropriate vehicle with which to exhaust [petitioner's] ineffective-assistance-of-counsel claim insofar as it relied upon evidence outside the record."). To exhaust the claim fully, the petitioner must then seek leave to appeal the denial of the Section 440 motion to the Appellate Division. *See Ture v. Racette*, No. 12-CV-01864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014). New York law then provides for no further discretionary appeal to the Court of Appeals. *See Ramos v. Walker*, 88 F. Supp. 2d 233, 234 n.3 (S.D.N.Y. 2000).

Where a habeas claim has not been fully exhausted in the state courts, federal courts may nonetheless deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2). Federal courts should only deny an unexhausted claim where it is plainly meritless. *See Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 381 (E.D.N.Y. 2013).

Charlotten failed to exhaust the state court process. To start, Charlotten asserts that he "did in fact exhaust all state court remedies known to him from his limited knowledge." *See* (Dkt. 14). He lists the "remedies" that he "exhausted," including contacting the Chenango County Sheriff to obtain a time served computation sheet, obtaining and reviewing the transcript of the sentencing proceeding in Chenango County Court, and speaking with his lawyer. *Id.* On the face of the response, Charlotten does not understand what he needs to do to actually exhaust his state law remedies. At the time he prepared his response to the pending motion, Charlotten was aware that the C.P.L. § 440.10 motion had been withdrawn. *See* (Dkt. 14). His response neither refers to any further efforts to exhaust his state court remedies, nor does it express any intention to do so. It is axiomatic that his lack of knowledge of the requirements of exhaustion does not defeat his legal

obligation to exhaust his state court remedies. *See Ramdeo v. Phillips*, No. 04-CV-1157, 2006 WL 297462 (E.D.N.Y. Feb. 8, 2006).

Based upon his failure to exhaust the state court remedies available to him, Charlotten's Petition must be dismissed. The record is clear that Charlotten has failed to exhaust his state court remedies as the C.P.L. § 440.10 motion was withdrawn, and neither the Petition nor the state court record indicates any further review by the state courts. Even if the Petition was construed to assert ineffective assistance of counsel as an additional ground for relief (as Charlotten alleges in his response) he has also failed to exhaust his state court remedies with respect to that claim. As a result, the District Court should dismiss Charlotten's Petition.

## B. The District Court should not stay Charlotten's Petition because it is meritless.

The District Court should not stay Charlotten's Petition. District Courts can stay a habeas petition if the petitioner has good cause for their failure to exhaust the state court process and their unexhausted claims are potentially meritorious. Here, Charlotten can show neither element. In consequence, the District Court should not stay Charlotten's Petition.

Where a petitioner presents one or more unexhausted claims in a habeas petition, the district court may dismiss the petition without prejudice, or it may stay the petition and hold it in abeyance to allow the petitioner to exhaust the claim(s) without risk that the one-year limitations period will expire before the time the petitioner would realistically be able to return to federal court, should his claims be rejected by the state courts. *See generally Rhines.* For example, where a petitioner has "reasonable confusion" as to whether a state filing would be "properly filed" (such that it would toll the statute of limitations under 28 U.S.C. § 2244(d)(2)), the Supreme Court has suggested that the petitioner may "fil[e] a 'protective' petition in federal court[,] ... asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). Under *Rhines*, a district court should stay a habeas petition only "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. "It is the petitioner who has the burden of demonstrating 'good cause' for his failure to exhaust previously any

12

unexhausted claims." *Perkins v. LaValley*, No. 11-CV-3855, 2012 WL 1948773, at *1 (S.D.N.Y. May 30, 2012) (cleaned up).

Charlotten has not requested that his Petition be held in abeyance pending his return to state court to exhaust the state court process. Had he made such a request, the Court would nevertheless recommend it be denied. Even if the Court found that *Rhines* was applicable to a petition where there were only unexhausted claims, there was good cause for the failure to exhaust, and no evidence of dilatory tactics, there is no merit to the Petition, as the state court record shows that Charlotten was granted time-served credit against his aggregate sentence. The Court therefore declines to recommend that the Petition be held in abeyance to allow Charlotten to exhaust his state court remedies.

* * *

While the Court is empowered to deny the Petition on the merits notwithstanding Charlotten failure to exhaust (28 U.S.C. 2254(b)(2)), the Court recommends not doing so. While the basis for the Petition is the time-served credit, Charlotten also alleges that his plea agreement was misleading regarding whether he would receive the credit, and that he would not have accepted the plea agreement but for his

13

misunderstanding of whether and how the credit would be applied. *See* (Dkt. 1, at 2 − 5). These claims were not addressed by the state court, and the record is therefore not sufficient to evaluate them. The Court agrees with Respondent that, consistent with the Supreme Court's holding in *Rhines,* it would be improvident to recommend dismissal on the merits because doing so would undermine AEDPA's interest in promoting comity and federalism. *See Rhines,* 544 U.S. at 273-74; *see also* (Resp. Memo, at 9).

## IV.    CONCLUSION

**WHEREFORE,** based on the above findings, it is hereby

**RECOMMENDED**, that Respondent's motion to dismiss be **GRANTED**, and that the Petition be dismissed **WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (*per curiam*).

In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (*per curiam*)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: October 24, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

2005 WL 475544
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ramon REYES, a/k/a Raymond St. Hilair, Petitioner,

v.

William PHILLIPS, Superintendent, Green
Haven Correctional Facility Respondent.

No. 02 Civ. 7319(LBS).
|
March 1, 2005.

*MEMORANDUM AND ORDER*

SAND, J.

**\*1** Petitioner Ramon Reyes ("Petitioner") filed the instant habeas petition pursuant to 28 U.S.C. § 2254. In a previous Memorandum and Order, familiarity with which is assumed, the Court dismissed certain unexhausted claims contained in the petition and stayed the remainder of the petition so that Petitioner could return to state court and exhaust his unexhausted claims. *Reyes v. Phillips,* 02 Civ. 7319, 2003 U.S. Dist. LEXIS 52 (January 6, 2003). Petitioner has now submitted a request to terminate the stay and renew the petition. For the reasons stated below, the Court determines that Petitioner's request is granted, unless Petitioner timely declares that he wishes to withdraw it without prejudice to renewal at a later date.

I. Background

Petitioner is currently serving a sentence of imprisonment of 41 2/3 years to life based on convictions in New York State court for second-degree murder, conspiracy, and attempted murder. The Appellate Division, First Department, unanimously affirmed Petitioner's conviction on June 20, 2000, *People v. Reyes,* 710 N .Y.S.2d 887 (N.Y.App.Div.2000), and the New York Court of Appeals denied leave to appeal on September 14, 2001, *People v. Reyes,* 759 N.E.2d 381 (N.Y.2001) (Graffeo, J.).

Petitioner, represented by counsel, filed this petition on September 10, 2002. In it, he made four distinct claims, as recounted in the Court's January 6, 2003, Memorandum and Order:

(1) he was denied his Sixth Amendment right to effective assistance of counsel based on his counsel's failure to join in the motion to vacate his plea and deficient performance at sentencing; (2) the trial court violated his due process rights by summarily denying his motion to withdraw his guilty plea; (3) the trial court violated his due process rights by failing to hold a hearing before accepting the prosecution's determination that he violated the cooperation agreement; and (4) his sentence violated the Eighth Amendment.

2003 U.S. Dist. LEXIS 52 at \*5-\*6. Respondent, represented by the office of the New York County District Attorney, moved to dismiss the petition on the ground that it contained at least one unexhausted claim.

The Court determined that Petitioner's Eighth Amendment claim and a portion of his effective-assistance-of-counsel claim were indeed unexhausted. The Eighth Amendment claim could be presented to the state courts by a motion pursuant to N.Y. Criminal Procedure Law § 440.20, and the right-to-counsel claim, to the extent that it relied on matters outside the trial record, could be raised in a motion under N.Y. Criminal Procedure Law § 440.10.2003 U.S. Dist. LEXIS 52 at \*8-\*12. Following the procedure laid out in *Zarvela v. Artuz,* 254 F.3d 374, 376 (2d Cir.2001), the Court dismissed those unexhausted claims, and stayed the balance of the petition "to permit the Petitioner to seek appropriate collateral relief in state court on his unexhausted claims." 2003 U.S. Dist LEXIS 52 at \*13. As prescribed by *Zarvela,* the stay was issued on two conditions, namely that

> **\*2** 1) Within thirty (30) days of the date of this Order, Petitioner must file the appropriate motions in state court seeking collateral relief on the unexhausted claims under §§ 440.10 and 440.20 or advise the Court that he wishes to proceed only on the exhausted claims; and 2) within thirty (30) days after the state courts have completed of their

review of his (presently) unexhausted claims, Petitioner must file an affidavit or declaration with this Court seeking to terminate the stay and renew his petition.

2003 U.S. Dist. LEXIS 52 at *13-*14. The Court noted that "if Petitioner fails to fulfill both of these conditions, the Court may vacate the stay *nunc pro tunc* as of the date of this Order, and the petition may be dismissed." 2003 U.S. Dist LEXIS 52 at *14. The case was transferred to the suspense docket of this Court pending further action.

On September 8, 2004, the Court received a letter from Petitioner's attorney (the "September 8 letter"). Enclosed with the letter was a copy of a decision, dated August 16, 2004, by which the letter asserted that "Judge Roger Hayes of New York State Supreme Court denied petitioner's motion pursuant to CPL 440." Petitioner's attorney stated in the letter that "Petitioner does not intend to appeal this order and I request that the court proceed in deciding his Federal Habeas Petition." The letter did not purport to have been copied to Respondent or Respondent's counsel.

On September 22, the Court entered an Order instructing Petitioner "that he should properly serve and file his application to terminate the stay and renew his petition, along with any materials submitted to the state courts that he desires this Court to consider in connection therewith, if he wishes the petition to be renewed." A copy of the September 8 letter, including the enclosure to that letter, was attached to the September 22 Order and thereby made a part of the record.

Following the September 22 Order, no further filings or correspondence ensued for more than four months. On January 31, 2005, noting that there had been no response to the September 22 Order, the Court entered another Order advising Petitioner that if the Court did not receive any communication from him or his attorney within thirty days, the petition would be dismissed.

On February 9, 2005, the Court received from Petitioner's counsel, by mail, an Affirmation and Declaration requesting to terminate the stay and renew his petition. Attached was a copy of the Notice of Motion by which Petitioner had sought "relief under CPL 440" (Decl. at 2). The Affirmation and Declaration had purportedly been served on Ryan W. Brackley, an Assistant District Attorney who is not the attorney of record for Respondent in this action. The actual attorney of record for Respondent, Assistant District Attorney Michael S. Morgan, represented that he had not been served with Petitioner's Affirmation and Declaration. In addition to arranging for the Affirmation to be docketed, the Court therefore arranged for ADA Morgan to receive a copy of it.

**\*3** On February 24, 2005, the Court received a letter from ADA Morgan indicating that Respondent opposed Petitioner's request to reinstate his petition, on the ground that Petitioner had not complied with the conditions of his *Zarvela* stay. The letter stated that Respondent was "not presently aware whether" notice of entry of the trial court's decision on Petitioner's state-court motion for post-judgment relief was ever previously served, as would be necessary under the rule of *Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir.1999), *aff'd,* 531 U.S. 4 (2000), and *People v. Washington,* 657 N.E.2d 497 (N.Y.1995), to begin the running of the thirty-day period during which Petitioner could seek to appeal that decision.[1] (Resp't Opp'n Letter at 2 n. 1.) "In an abundance of caution," Respondent indicated, such notice was served in conjunction with the letter. (*Id.*) Notwithstanding the uncertainty regarding whether there had been any previous service of notice of entry of the trial court's decision on Petitioner's state-court motion, Respondent requested that the Court vacate the *Zarvela* stay *nunc pro tunc* and dismiss the petition.

[1]     It is possible that only service of the order itself by the People as the prevailing party in the trial court proceeding, and not service of a "notice of entry," would actually have been necessary to begin the running of the thirty-day period. *Compare, e.g., People v. Washington,* 618 N.Y.S.2d 32, 33 (N.Y.App.Div.1994) (rejecting the rule that "service of the order must include notice of entry"), *aff'd,* 657 N.Y.2d 497, *with, e.g., People v. Aubin,* 666 N.Y.S.2d 778, 779 (N.Y.App.Div.1997) (stating that "the 30-day period for taking an appeal does not begin to run until the prevailing party serves a copy of the order and notice of entry thereof upon the other party"). In the remainder of this Memorandum and Order, Respondent's description of the required action will generally be used.

II. Analysis

As noted above, the *Zarvela* stay incorporated in the Court's January 6, 2003 Memorandum and Order was issued on two

distinct conditions. First, that Petitioner, within thirty days, "file the appropriate motions in state court seeking collateral relief on the unexhausted claims under §§ 440.10 and 440.20 or advise the Court that he wishes to proceed only on the exhausted claims," and second, that Petitioner, "within thirty (30) days after the state courts have completed of their review of his [previously] unexhausted claims ... file an affidavit or declaration with this Court seeking to terminate the stay and renew his petition." 2003 U .S. Dist. LEXIS 52 at *13-*14. Because it is necessary that Petitioner have complied with both of those two conditions, it is convenient to examine them separately. If either condition is shown to have been violated, "the Court may vacate the stay *nunc pro tunc* as of [January 6], and the petition may be dismissed." 2003 U.S. Dist LEXIS 52 at *14.

A. First Condition of the Stay
Pursuant to the first condition of the *Zarvela* stay, Petitioner originally had thirty days from the date of this Court's January 6, 2003 Memorandum and Order to either file the appropriate motions in state court seeking collateral relief on his unexhausted claims, or advise the Court that he wished to proceed only on his exhausted claims. The date thirty days after January 6, 2003 was February 5, 2003. On February 3, 2003, however, the Court received a letter from Petitioner's counsel requesting an extension of time to file a § 440.10 motion in state court until February 12, 2003. The requested extension was granted by endorsement of that letter. Petitioner therefore had until February 12, 2003, to file a motion in state court consistently with the first condition of the *Zarvela* stay, as modified.

**\*4** The state-court motion papers attached to Petitioner's application to vacate the stay are dated February 10, 2003; the "filed" stamp on the face of their first page appears to indicate that they may have actually been filed on February 11, or at least not docketed until that date. A filing on either February 10 or 11 would have been timely under the extension granted Petitioner by the Court's endorsement of February 3. While it would have been best for Petitioner's counsel to have averred the date on which the § 440.10 motion was filed in his Affirmation and Declaration seeking to terminate the stay and renew the petition, counsel did aver in his Affirmation and Declaration that he had attached "a copy of Mr. Reyes's petition to the Supreme Court of the State of New York for relief under CPL 440" (Pet'r Decl. ¶ 4); that averment reasonably implies that at least one of the two dates appearing on the face of the attached papers is an accurate indication of the date that the petition was filed. Thus, the first condition

of the *Zarvela* stay has been satisfied as to the timing of Petitioner's return to state court.

Whether the first condition of the *Zarvela* stay has been satisfied by the substance of Petitioner's return to state court is a closer question. This Court's January 6, 2003 Memorandum and Order instructed Petitioner that while a motion under N.Y.Crim. Proc. Law § 440.10 was the appropriate vehicle with which to exhaust his ineffective-assistance-of-counsel claim insofar as it relied upon evidence outside the record, a collateral attack on his sentence by a motion under N.Y.Crim. Proc. Law § 440.20 was the appropriate mechanism by which to exhaust his Eighth Amendment claim. 2003 U.S. Dist. LEXIS 52 at *8-*12. Petitioner was specifically directed to "file the appropriate motions in state court seeking collateral relief on the unexhausted claims under §§ 440.10 and 440.20" unless he chose instead to "advise the Court that he wishe[d] to proceed only on the exhausted claims." 2003 U.S. Dist. LEXIS 52 at *13. It is therefore at least a bit troubling that Petitioner, according to the papers included with his application to terminate the stay and renew the petition, chose instead to file only a motion under § 440.10.

In his § 440.10 motion papers, however, Petitioner did bring his Eighth Amendment claim to the attention of the state courts, with an explicit mention of the federal constitutional source of the right and multiple citations to federal case law. The Second Circuit has noted that "if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts," *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 193 (2d Cir.1982) (in banc), and this observation would seem to apply here. While there might be some room for an argument that Petitioner's choice of a possibly incorrect procedural vehicle rendered his efforts at exhausting the Eighth Amendment claim insufficient, the issue has not been addressed by either Petitioner or Respondent, and the Court will not resolve it against Petitioner without the benefit of briefing. Therefore, Respondent not having raised this aspect of Petitioner's potential lack of compliance with the first condition of the *Zarvela* stay in opposition to Petitioner's application to terminate the stay and renew the petition, the application will not be denied on that basis.

B. Second Condition of the Stay
**\*5** Respondent asserts that Petitioner has violated the second condition of the *Zarvela* stay by not acting with sufficient diligence either in exhausting his claims or in returning to

this Court. Although the history of this case is indeed at first glance not indicative of great diligence, the uncertainty regarding whether notice of entry of the trial court's denial of Petitioner's § 440.10 motion was ever served until quite recently leads to a logical difficulty with Respondent's argument.

If notice of entry of the trial court's denial of Petitioner's § 440.10 motion had been served contemporaneously with the denial itself, Petitioner's actions since then would have failed to comply with the second condition of the *Zarvela* stay. Assuming that notice of entry of the denial was served by the end of August 2004, Petitioner's time to seek leave to appeal the denial to the Appellate Division would have expired by the end of September 2004. *See* N.Y.Crim. Proc. Law §§ 450.15(1), 460.10(4)(a) (McKinney 2004) (defendant has thirty days from service of a copy of the order to be appealed to seek leave to appeal denial of a § 440.10 motion to the Appellate Division). On that assumption, Petitioner's initial letter to the court would have been premature at best even if one ignores its flaws of form, and his subsequent proper filing would have been much too late.

When Petitioner first contacted the Court on September 8, 2004, regarding the denial of his § 440.10 motion, he had not properly exhausted his previously unexhausted claims. Failure to seek leave to appeal the denial of a § 440.10 motion to the Appellate Division constitutes failure to exhaust the claims raised in that motion. *Pesina v. Johnson,* 913 F.2d 53 (2d Cir.1990). While *Pesina'* s holding that the unexhausted status of those claims continues even after the deadline to seek leave to appeal passes, 913 F.2d at 54, may or may not remain good law, *compare, e.g., Bloomer v. Costello,* 00 Civ. No. 5691, 2001 U.S. Dist. LEXIS 490 (January 24, 2001) (following *Pesina* ), *with e.g., Castillo v. Hodges,* 01 Civ. 2172, 2004 U.S. Dist. LEXIS 5077 (S.D.N.Y. March 29, 2004), at *14-*15 (finding this aspect of *Pesina* inconsistent with *Coleman v. Thompson,* 501 U.S. 722 (1991)), it is clear that the claims remained unexhausted on September 8. The opinion denying Petitioner's § 440.10 motion that was enclosed with the September 8 letter is dated August 16, 2004, so that even if a notice of entry had been served immediately after the denial, Petitioner would have had until September 16 or later to seek leave to appeal. Thus, even ignoring the fact that Petitioner's September 8 letter was not properly served or filed, it would have been premature. Unless a counseled petitioner who returns from a *Zarvela* stay with still-unexhausted claims because of an intent not to appeal those claims to the highest available state court

can appropriately be given a renewed *Zarvela* stay, which is unlikely, the September 8 letter-if treated as an application to terminate the stay and renew the petition-would have led, assuming timely service of a notice of entry of the denial of Petitioner's § 440.10 motion, to the petition being dismissed as mixed on the ground that it still contained unexhausted claims.

**\*6** By the time Petitioner served and filed a more proper application to terminate the stay and renew the petition, in February 2005, significantly more than thirty days would have passed from the time that "the state courts ha[d] completed their review of [Petitioner's previously] unexhausted claims," *Reyes,* 2003 U.S. Dist. LEXIS 52 at *13, if notice of entry had been timely served on Petitioner. Assuming service of notice of entry sometime in August, all state court review of Petitioner's claims would have ceased at a corresponding time in September, upon expiration of the time to seek leave to appeal the trial court's denial of Petitioner's motion to the Appellate Division. Petitioner's application to terminate the stay and renew the petition would therefore have come more than four months after the conclusion of state court review. Thus, if notice of entry had been timely served, Petitioner's belated application to terminate the *Zarvela* stay and renew the petition would not have been in compliance with the second condition of the stay.

If notice of entry of the trial court's denial of Petitioner's § 440.10 motion was not served contemporaneously with the denial itself, however, but rather was served for the first time in conjunction with Respondent's letter of February 23, then it would appear that according to New York State and Second Circuit precedent, the state courts have technically still not completed their review of Petitioner's previously unexhausted claims. *People v. Washington,* 657 N.E.2d 497, 498 (N.Y.1995), holds that "service by the prevailing party is necessary under [N.Y.Crim. Proc. Law] 460.10 in order to commence the time period for the other party to take an appeal." Therefore, it was held in *Washington* that a "notice of appeal was timely" where "no evidence was presented as to the date on which ... the prevailing party in the trial court [ ] served the order on the [other party] and, in fact, no evidence was presented that there was such service." 657 N.E.2d at 498. Applying *Washington,* the court in *Bennett v. Artuz,* 199 F.3d 116, 120 (2d Cir.1999), *aff'd,* 531 U.S. 4 (2000), held that a habeas petitioner's § 440.10 motion was "pending" in the New York State courts for federal habeas purposes where the motion had been denied nearly four years previously in an oral decision by the trial court, and the petitioner had received

notice of this oral decision, but the petitioner allegedly had not received a copy of any written order denying the motion.[2]

[2]   *Bennett* relied in part on the rules of the Appellate Division, Second Department, in which the petitioner in that case would have had to seek leave to appeal. The rules of the Appellate Division, First Department, to which Petitioner in this case would have had to seek leave to appeal, are however essentially identical in relevant part to the rules of the Second Department. *Compare* N.Y. Ct. Rules § 600.8(d)(1) & (d)(3) (2005) (stating that "[a]pplication for a certificate granting leave to appeal to this court shall be made, in writing, within 30 days after service of the order upon the applicant" and that "[t]he moving papers must include ... a copy of the order sought to be reviewed; and ... a copy of the memorandum or opinion of the court below or a statement that there was none") *with* N.Y. Ct. Rules § 670.12(b) (1) & (b)(2)(vi), *quoted in Bennett,* 199 F.3d at 120 (stating that "An application pursuant to ... CPL 460.15 for leave to appeal to this court from an order shall be made in writing within 30 days after service of the order upon the applicant" and that "[t]he application ... shall include ... a copy of the order sought to be reviewed and a copy of the decision of the court of original instance or a statement that there was no decision.").

Admittedly, even if notice of entry of the trial court's denial of Petitioner's § 440.10 motion had not been served until quite recently, the instant case would be distinguishable from *Bennett* on the ground that Petitioner (by his counsel) has in some way received a written copy of the order he should have sought leave to appeal: this is clear from the fact that such a copy was attached to the September 8 letter. *Washington* and related New York State case law, however, do not appear to indicate that receipt of a written copy of an order by some means other than service by the prevailing party is sufficient to begin the running of the time to appeal. *See Washington,* 657 N.E.2d at 498 (noting that the Court of Appeals was resolving "a question left open in *People v. Singleton:* whether service *by the prevailing party* is necessary under [N.Y.Crim. Proc. Law § ] 460.10 in order to commence the time period for the other party to take an appeal.") (emphasis added and internal citation omitted); *People v. Singleton,* 527 N . E.2d 281, 281 (N.Y.1988) (explicitly refraining from considering the "contention[ ] that the People's time to appeal to the

Appellate Division was triggered by their receipt of a copy of the Supreme Court order from the court, and that service of the order by the prevailing party was unnecessary for this purpose"). And to the extent that there is uncertainty regarding the proper extent of the *Bennett* rule, the Court is reluctant to resolve such uncertainty against Petitioner without the benefit of briefing. This is, despite the delays in its prosecution, Petitioner's first federal habeas petition, and "a procedural dismissal 'of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." ' *Ross v. Artuz,* 150 F.3d 97, 100 (2d Cir.1998) (quoting *Lonchar v. Thomas,* 517 U.S. 314, 324 (1996)).

**\*7**   Therefore, the Court acknowledges that under *Bennett,* Petitioner's § 440 motion may still be pending, so far as a federal habeas court is concerned. In refusing to hold that the failure of the petitioner in that case to seek relief by mandamus stopped the tolling of the limitations period, *Bennett* cautioned that "it is not a petitioner's burden to cause state courts to act expeditiously to avoid a time bar claim raised by the state itself." 199 F.3d at 120. If Respondents indeed failed to serve notice of entry of the trial court's denial of Petitioner's § 440.10 motion contemporaneously with that denial, it may be improper under this principle of *Bennett* for any delay following that failure, and occurring while the motion was technically still pending, to be attributed to Petitioner.

Further, *Washington'* s holding that absent service of the decision by the prevailing party, the time to appeal would not have begun to run, suggests that, absent service of the decision by the prevailing party, it could not be the case that the state courts had necessarily completed their review of Petitioner's previously unexhausted claims. Until his time to appeal had run, Petitioner would still retain the right to cause that review to continue further, which seems inconsistent with the notion that the review was "completed." And if the state courts had not completed their review of Petitioner's previously unexhausted claims, the second thirty-day period upon which this Court's *Zarvela* stay was conditioned would not have begun. Thus, if Petitioner was in fact first served with a notice of entry in conjunction with Respondent's opposition to the application to renew the petition, it is problematic to assert that the *Zarvela* stay should be vacated because Petitioner's actions were untimely with respect to that second thirty-day period. If Petitioner has only recently been served with the order denying his § 440.10 motion, it may well be that under

the rule of *Washington* he could properly appeal from it in the near future, and that he could then return to this Court within thirty days after his appeal was resolved and exhaustion was thereby completed.

It is understandable that Respondent would view Petitioner as "not [having] acted with the diligence contemplated by the Second Circuit when it authorized the *Zarvela* stay procedure." (Resp't Opp'n Letter at 2.) To decide that one "does not intend to appeal" the order of a lower state court issued during the exhaustion process, as Petitioner's counsel notified the Court in his September 8 letter that Petitioner had done, is not an option properly open to the beneficiary of a *Zarvela* stay. It also would generally be inconsistent with the "expeditious" action envisioned by *Zarvela,* 254 F.3d at 381, for a petitioner to respond to a Court order informing him that he has failed to properly serve and file an application to renew by remaining silent for four months. If the thirty-day period mentioned in the second condition upon which the *Zarvela* stay was issued has actually not yet begun to run, however, and if Petitioner in fact retains the right to seek leave to appeal and thereby complete exhaustion of his previously unexhausted claims, it would seem inconsistent with *Bennett* to vacate the stay and dismiss the petition on the ground that Petitioner has not acted diligently to exhaust his claims and return to the Court within thirty days thereafter. Although it appears from the September 8 letter that Petitioner's counsel did not then intend for Petitioner to complete exhaustion of his claims during his return to state court, it would be premature to conclude that Petitioner will not exhaust his claims if the option of exhaustion is still open to him. And however much Petitioner's actions (through counsel) in the time since the lower court denied his § 440.10 motion might appear to indicate lack of diligence, the Court is mindful of *Bennett'* s admonition that "it is not a petitioner's burden to cause state courts to act expeditiously," 199 F.3d at 120, upon an application for relief that is properly pending before them.

**\*8** If notice of entry has only recently been served on Petitioner, his February 10 application to terminate the stay and renew the petition may in fact technically have come too early-rather than too late-because it would have been filed before the state courts had actually completed their review of his application for post-conviction relief. It would be inconsistent with the spirit of *Bennett,* however, to penalize Petitioner with dismissal of his first federal habeas petition for confusion that, under the logic of *Bennett* and *Washington,* is attributable to the state and to Respondent as much as it is attributable to Petitioner. If the petition would not be subject

to dismissal but for the fact that Petitioner responded to this Court's January 31 Order with an application to terminate the stay and renew the petition, rather than with an explanation of why such an application would be filed later, then it seems inappropriate to penalize Petitioner so harshly for responding to the Court's prompting in the manner that he did. As previously noted, "a procedural dismissal 'of a first federal habeas petition is a particularly serious matter.' " *Ross v. Artuz,* 150 F.3d 97, 100 (2d Cir.1998) (quoting *Lonchar v. Thomas,* 517 U.S. 314, 324 (1996)).

Therefore, Petitioner may, if he so desires, promptly withdraw his application to terminate the stay and renew the petition, without prejudice to a renewal of the application when exhaustion is complete. If Petitioner does withdraw the application, however, he must provide the Court and counsel for Respondent with regular status updates, in order to avoid any further unnecessary delay in the final resolution of this petition.

### III. Conclusion

For the reasons set out above, the Court finds that it would be inappropriate to dismiss the petition on the current record. If Petitioner wishes to withdraw his application to terminate the stay and renew the petition, without prejudice to a later renewal of said application, he may do so within thirty (30) days of the date of this Memorandum and Order, by declaration properly filed and served on Respondent's attorney of record. Following any such withdrawal, Petitioner shall provide the Court and Respondent with a status letter sixty (60) days after the date of said withdrawal and every sixty (60) days thereafter. The stay may be vacated *nunc pro tunc* and the petition dismissed, prior to renewal of the application to terminate the stay, if Petitioner fails to provide such status letters in a timely fashion, or if such status letters indicate that Petitioner has failed to comply with the terms of the January 6, 2003 Order staying this petition, or if Respondent, by motion duly made and allowing Petitioner an opportunity to respond, demonstrates that dismissal is appropriate (on the ground that, for example, notice of entry of the denial of Petitioner's § 440.10 motion was served on Petitioner contemporaneously with said denial).

**\*9** If Petitioner does not withdraw his application to terminate the stay and renew the petition within thirty (30) days of the date of this Memorandum and Order, the application shall be granted, and the action removed from the suspense docket and reinstated to the active docket of this Court. In that case, Respondent shall have forty-five (45)

2005 WL 475544

days from the date of reinstatement to answer the petition, as requested in Respondent's letter to the Court. Petitioner shall then have fourteen (14) days from the date on which he is served with Respondent's answer to file a reply, and the petition will be considered fully submitted as of that date.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 475544

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 2:02cv07319**<br>REYES v. PHILLIPS | — | S.D.N.Y. | Sep. 11, 2002 | Docket |

**History (7)**

**Direct History (1)**

1. Reyes v. Phillips
   2005 WL 475544 , S.D.N.Y. , Mar. 01, 2005

**Related References (6)**

2. People v. Reyes
   273 A.D.2d 127 , N.Y.A.D. 1 Dept. , June 20, 2000

   *Leave to Appeal Denied by*

3. People v. Reyes
   96 N.Y.2d 941 , N.Y. , Sep. 14, 2001

   *AND Habeas Corpus Dismissed by*

4. Reyes v. Phillips
   2005 WL 2757541 , S.D.N.Y. , Oct. 24, 2005

5. Reyes v. Phillips
   2003 WL 42009 , S.D.N.Y. , Jan. 06, 2003

   *Subsequent Determination*

6. Reyes v. Phillips
   2005 WL 2173812 , S.D.N.Y. , Sep. 06, 2005

7. People v. Reyes
   5 Misc.3d 1023(A) , N.Y.Sup. , Aug. 16, 2004

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2895439
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Nicholas TURE, Petitioner,

v.

Steven RACETTE, Superintendent, Clinton

Correctional Facility,[1] Respondent.

[1]    Steven Racette, Superintendent, Clinton
Correctional Facility, is substituted for The
Honorable Jerry Scarano, Saratoga County Court.
Rule 2(a), Rules Governing Section 2254 Cases
in the United States District Courts (petitioner
"must name as respondent the state officer who has
custody"); FED. R. CIV. P. 25(d).

No. 9:12–cv–01864–JKS.
|
Signed June 25, 2014.
|
Filed June 26, 2014.

**Attorneys and Law Firms**

Nicholas Ture, Dannemora, NY, pro se.

Paul B. Lyons, New York State Attorney General, New York,
NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior District Judge.

**\*1** Nicholas Ture, a New York state prisoner proceeding
*pro se,* filed a Petition for a Writ of Habeas Corpus with this
Court pursuant to 28 U.S.C. § 2254. Ture is currently in the
custody of the New York State Department of Corrections
and Community Supervision and is incarcerated at Clinton
Correctional Facility. Respondent has answered, and Ture has
not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On December 1, 2009, Ture was charged with attempted
murder in the second degree, assault in the first degree, assault
in the second degree, and criminal possession of a weapon in
the fourth degree after he repeatedly stabbed his mother one
day after being released from county jail. Ture was arraigned
and entered a not guilty plea in Saratoga County Court
on December 4, 2009. The People requested a competency
evaluation to determine whether Ture was fit to stand trial.
The court ordered the examination and stayed the proceedings
pending the outcome.

At a conference held on March 1, 2010, the court noted that
a Criminal Procedure Law ("CPL") § 730.30 competency
examination had been performed and that two psychiatrists
reported that Ture did not by reason of mental disease
or defect lack the capacity to understand the proceedings
against him or to assist in his own defense. The court then
indicated that it would proceed to a hearing on the matter.
The prosecutor informed the court that the People were ready
to proceed with a hearing but that she understood that the
defense had decided to consent to the issue of capacity
and agree with the doctors' evaluations. Counsel for Ture
confirmed that the defense would not be contesting Ture's
capacity to proceed in the matter. Ture then asked to address
the court and stated, "Well, I just wanted to say that, you
know, I do love my mother, and I'm sorry this whole thing
happened, and I just—you know, I'll do my time." The court
then admonished Ture that "the less said, the better."

At the next conference, Ture requested new counsel, and the
court denied the request. The court also explained to Ture that
the prosecutor had indicated that the People would be willing
to accept a plea. The prosecutor stated that the People were
willing to accept a guilty plea to attempted murder with a
sentence of 20 years. The court also stated that "it's possible
in this case that you might be successful in entering a plea
of not guilty by reason of mental disease or defect." The
court explained the process for doing so, and the prosecutor
indicated that the People would not object to such a plea. In
response to his question, the court also informed Ture that he
had time to consider his options.

On April 21, 2010, the prosecutor stated that the People
were offering Ture the opportunity to plead guilty to all
counts in the indictment in exchange for a sentence of
15 years' imprisonment. The prosecutor indicated that Ture
would also be required to waive his right to appeal. The
court additionally informed Ture that a period of post-release
supervision ranging from 2 1/2 years to 5 years would also

2014 WL 2895439

be imposed. When asked if he understood the terms of the offer, Ture stated that he did not understand "supervision." The court instructed defense counsel to explain post-release supervision to Ture off the record. Afterwards, the court asked Ture if he understood the entire offer, including post-release supervision; Ture answered in the affirmative. The court then asked Ture if he was in agreement with the terms and Ture responded, "Yes, sir, your Honor."

**\*2** The court then explained the rights that Ture was giving up by pleading guilty, including the privilege against self-incrimination and his rights to a speedy and public jury trial and to cross-examine and offer witnesses. The court also explained that, as part of the plea agreement, Ture would be required to waive his right to appeal. The court asked Ture whether he understood what that meant, and Ture responded, "Does that mean I can't appeal? Cannot appeal or can appeal?" The court permitted Ture to confer off the record with his attorney. Thereafter, Ture stated that he understood the waiver of the right to appeal. The court additionally warned Ture that the instant offense was a felony and that a future felony conviction could lead to enhanced sentencing because of the instant offense. Ture indicated that he understood. Ture further stated that he understood the court's statement that he could not be forced into pleading guilty but would have to do it freely and voluntarily.

The court then asked Ture, "This morning are you on any kind of drugs or medication or are you suffering from any kind of illness that would make it difficult for you to understand what is being said here?" Ture replied, "No, I'm not." Ture confirmed his intention to enter an *Alford* plea. [2] The prosecution then explained the evidence against Ture, including two knives, three eyewitnesses, the statement of the victim, and photographs of a blood smear on Ture and his clothes. Ture then pled guilty to each of the charges.

[2]  An *Alford* plea is entered when the defendant "voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." *N. Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

On June 17, 2010, Ture appeared with counsel for sentencing. The People requested that the negotiated 15–year sentence be imposed and that an order of protection be issued for the victim. Ture addressed the court and asked for leniency, stating:

I realize what I have done is terrible. Believe me when I say no one is more sorry than I am..... I want to make it very clear that I honestly did not intentionally mean for this to happen, and I would never hurt her in the right mind. I honestly don't remember attacking her at all. I don't—I blacked out, and I was—I was blacked out for most of the end of last Summer.

On a positive note, my mother has been coming to see me regularly. We've been having good talks, and we've moved on from what has happened, and there are no hard feelings between us. We both agree this was a blackout, and we both agree that it was caused by me not being on my medications for so long. We also feel it could have been prevented. Like she said, we're angry with the Saratoga City Court system. They had sent out a warrant ... to take me to the hospital to be treated. Instead of doing so, they incarcerated me early on a misdemeanor. Judge Wait knew of my condition and knew I needed to be hospitalized. He instead sent me to County Jail for an evaluation, and the doctors didn't help, and I did my 20 days and just got worse. And I was never put on my medicine, and I was then released to my parents in worse condition [sic] I've been in. I committed my act the following morning of being released. And we feel none of this would have happened if I had only been sent to the hospital like the warrant had said.

**\*3** .... I've spent the last ten months in the medical unit of the County Jail, two of those months were at Marcy Psychiatric. I've been taking my meds everyday, I've caused no trouble, and I've been doing very well.

The court sentenced Ture to concurrent determinate prison terms of 15 years for the attempted murder and first-degree assault convictions plus an additional 5–year term of postrelease supervision. The court also sentenced Ture to a concurrent determinate term of 5 years' imprisonment plus 3 years of post-release supervision for the second-degree assault conviction and a concurrent 1–year term of imprisonment for the criminal possession of a weapon conviction.

By papers dated January 24, 2011, Ture moved *pro se* to vacate the judgment of conviction pursuant to CPL § 440.10 on the ground that there was newly discovered evidence of his innocence, namely, his untreated mental illness. Ture also claimed that his attorney failed to inform him of his right to

testify before the grand jury and that his sentence was harsh and excessive. The County Court denied the motion, finding that the newly-discovered evidence claim was without merit and that his excessive sentence claim was a matter of record and thus not properly subject to collateral review. Ture did not appeal the court's § 440.10 denial.

Through counsel, Ture appealed his conviction, arguing that the trial court should not have accepted Ture's guilty plea in light of the evidence that Ture was not guilty by reason of mental disease or defect. The Appellate Division denied the appeal in a reasoned opinion concluding that "the proof regarding his mental capacity does not establish that he was incompetent." *People v. Ture,* 94 A.D.3d 1163, 941 N.Y.S.2d 530, 530–31 (N.Y.App.Div.2012). Ture sought leave to appeal the denial to the New York Court of Appeals, which was summarily denied on June 7, 2012. *People v. Ture,* 19 N.Y.3d 968, 950 N.Y.S.2d 120, 973 N.E.2d 218 (N.Y.2012).

Ture timely filed a Petition for a Writ of Habeas Corpus to this Court on November 30, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Ture raises four grounds for relief. First, Ture argues that he is "[n]ot guilty due to [the] negligence of county jail and Saratoga Court" because he was denied hospitalization and unmedicated when he was released from his prior incarceration. He next argues that his pre-trial counsel was prejudiced against him and told him that he would not assert arguments or raise evidence that challenged his culpability and that his appellate counsel was ineffective for failing to raise the issue of the negligence of the County Jail on appeal and by failing to request oral argument. He additionally argues that he is not guilty of the offense because of mental infirmity. Finally, Ture argues that his sentence was harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d) (2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*\*4* To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke,* ––– U.S. ––––, ––––, 131 S.Ct. 859, 863, 178 L.Ed.2d 732 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker,* 501 U.S. 797, 804, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Ture has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon,* 342 U.S. 524, 530, 72 S.Ct. 525, 96 L.Ed. 547 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy,* 197 F.2d 65, 66–67 (2d Cir.1952) (per curiam).

## IV. DISCUSSION

A. Exhaustion

Respondent correctly contends that Ture has failed to exhaust all but his third claim. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b) (1); *see Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.2005).

On direct appeal, Ture raised only his claim that the County Court should not have accepted his guilty plea in light of the evidence that Ture was not guilty by reason of mental disease or defect which, construed liberally as discussed below, encompasses the third claim in his Petition. Ture also sought leave to appeal the denial in the New York Court of Appeals, thus completing the exhaustion process. Although Ture raised the remaining claims in his *pro se* CPL § 440.10 motion, Ture did not seek leave to appeal the denial of that motion. Thus, these claims are unexhausted.

**\*5** With the exception of the ineffective assistance of counsel claim (claim 2), his unexhausted claims are procedurally barred. Because Ture's claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Ture cannot bring a motion to vacate as to these claims. N.Y. CRIM. PROC. LAW § 440.10(2) (c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal...."). Moreover, Ture cannot now raise these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez,* 510 F.3d 382, 390 (2d Cir.2008) (citation omitted); *see also Grey,* 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), superceded by statute on other grounds, *United States v. Gonzalez–Largo,* No. 07–cv–0014, 2012 WL 3245522, at *2 (D.Nev. Aug.7, 2012). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Ture does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Ture may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.,* 280 F.3d 87, 94 (2d Cir.2001).

Ture's unexhausted ineffective assistance of counsel claim is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan,* 411 F.3d 340, 347 n. 6 (2d Cir.2005); *Turner v. Sabourin,* 217 F.R.D. 136, 147 (E.D.N.Y.2003). Ture may therefore still exhaust this claim in state court. This Court could stay the Petition and allow Ture to return to state court to satisfy the exhaustion requirement as to the remaining claim. *See Zarvela v. Artuz,* 254 F.3d 374, 380–83 (2d Cir.2001). However, Ture has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). In his Petition, Ture provides no reason why he did not seek relief on this claim through a coram nobis application to the state court.

**\*6** Despite Ture's failure to exhaust the majority of his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines,* 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B. Merits

*Claims 1 and 3: Not Guilty*
In claim 1, Ture argues that he is "[n]ot guilty due to [the] negligence of county jail and Saratoga Court." He alleges that the County Court and Jail's failure to hospitalize and medicate him caused him to attack his mother just 24 hours after he was released from jail. Ture similarly asserts in claim 3 that he is "[n]ot guilty due to mental infirmity." In support of this claim, he states that he "was off medication for a period of twenty days before and during time of attack[,] have diagno[ses] of scitsophrenia [sic] and bipolar, have been diagnosed since the age of sixteen and have been off and on medication for the past seven years." Because Ture alleges that the County Court and Jail's negligence in failing to ensure that he was medicated led to his mental infirmity, the substance of these claims appear to be identical and both attack his guilty plea.

Construing Ture's *pro se* Petition liberally, *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam), this Court may discern that Ture's not guilty claims raise three potential arguments: 1) his plea was involuntary, unknowing, or unintelligent; 2) the trial court should have rejected his plea and instead adjudicated him not guilty due to mental disease or defect; and 3) there was an insufficient basis for the plea.

On direct appeal, the Appellate Division rejected Ture's challenge to his plea, concluding:

> [B]y not moving to withdraw his plea or vacate the judgment of conviction, [Ture] did not preserve his argument[ ] ... that his *Alford* plea was not supported by sufficient record proof. In any event, the record reveals that County Court conducted a thorough plea allocution, [Ture] indicated that he understood and agreed to the sentence, the evidence that he committed the acts was compelling, and the proof regarding

his mental capacity does not establish that he was incompetent.

*Ture,* 941 N.Y.S.2d at 530 (internal citations and quotation marks omitted).

As Respondent notes, Ture's failure to move to withdraw his plea or vacate the judgment of conviction dooms any challenge to his plea on federal habeas review. In order to preserve a claim that a guilty plea was involuntarily made or erroneously accepted, New York courts have held that "a defendant must either move to withdraw the plea under C.P.L. § 220.60(3) or move to vacate the judgment of conviction under C.P.L. § 440.10." [3] *Snitzel v. Murry,* 371 F.Supp.2d 295, 300–01 (W.D.N.Y.2004) (citing New York cases); *see, e.g., People v. Clarke,* 93 N.Y.2d 904, 690 N.Y.S.2d 501, 712 N.E.2d 668, 669 (N.Y.1999); *People v. Lopez,* 71 N.Y.2d 662, 529 N.Y.S.2d 465, 525 N.E.2d 5, 6 (N.Y.1988). It is well settled in this Circuit that this preservation rule provides an adequate and independent state ground on which to deny habeas relief. *See, e.g ., Hunter v. McLaughlin,* No. 04 Civ. 4058, 2008 WL 482848, at *1–4 (S.D.N.Y. Feb. 21, 2008); *Shanks v. Greiner,* No. 01 Civ. 1362, 2001 WL 1568815, at *3–4 (S.D.N.Y. Dec. 10, 2001). Because the Appellate Division rejected Ture's challenge to his plea on independent and adequate state procedural grounds, federal review is barred unless Ture establishes cause for the default and resulting prejudice or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

3      Section 220.60(3) provides: "At any time before the imposition of a sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as existed at the time of such plea, is restored." N.Y. CRIM. PROC. LAW § 220.60(3).

 **\*7** Ture fails to establish either of these mitigating factors in this case. Even if he could demonstrate cause, which does not appear from the record, he cannot show prejudice insofar as the arguments underlying the claim are meritless. *See Pettigrew v. Bezio,* No 10–CV–1053, 2012 WL 1714934, at *4 (W.D.N.Y. May 15, 2012) (concluding that a petitioner

cannot show actual prejudice where the underlying defaulted claim is meritless); *see also Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) (noting that federal habeas relief is unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated).

As the appellate court found, the record belies any claim that his guilty plea was involuntary, unknowing, or unintelligent. *Ture,* 941 N.Y.S.2d at 530. The record indicates that, prior to accepting his plea, the trial court informed Ture that "it's possible in this case that you might be successful in entering a plea of not guilty by reason of mental disease or defect." The court explained the process for doing so, and the prosecutor indicated that the People would not object to such a plea. The court also informed Ture that he had time to consider his options. It therefore appears that Ture weighed his options and the risks attendant with each and then entered his *Alford* plea. Ture further indicated that he was pleading freely and voluntarily and that he was not suffering from any illness that would make it difficult for him to understand the proceedings. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

Moreover, any claim that the trial court should not have accepted his *Alford* plea and instead adjudicated him not guilty by reason of mental disease or defect is barred by his guilty plea.[4] *See Bakic v. United States,* 971 F.Supp. 697, 700 (N.D.N.Y.1997) (voluntary guilty plea precludes subsequent collateral attack based on insanity defense); *see also United States v. Bendicks,* 449 F.2d 313, 315 (5th Cir.1971) (insanity defense is non jurisdictional). A defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *see also Hill v. Lockhart,* 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States,* 815 F.2d 879, 881 (2d Cir.1987) (internal citation omitted). The later assertion of a defense to the criminal charge which does not challenge the court's jurisdiction is therefore precluded by a guilty

plea. *See United States v. Hsu,* 669 F.3d 112, 117–18 (2d Cir.2012) (noting that a defendant ordinarily waives a statute of limitations defense by pleading guilty to an offense).

4   The fact that Ture's plea was made pursuant to *Alford* and not an unqualified guilty plea does not save his claim. *See In re Silmon v. Travis,* 95 N.Y.2d 470, 475, 718 N.Y.S.2d 704, 741 N.E.2d 501 (N.Y.2000) (noting that, under New York law, *Alford* pleas "are no different from other guilty pleas"). Courts within this Circuit have held in § 2254 cases that the *Tollett* "principle applies with equal force where, as here, the accused entered an *Alford* plea." *See, e.g., Kalu v. New York,* No. 08–CV–4984, 2009 WL 7063100, at * 10 (E.D.N.Y. Sept.15, 2009) (collecting cases), *report adopted sub nom, Ndukwe v. New York,* 2010 WL 4386680 (E.D.N.Y. Oct.28, 2010). Other Circuits have come to the same conclusion. *See Fields v. Att'y Gen.,* 956 F.2d 1290, 1294–96 (4th Cir.1992) (applying *Tollett* to *Alford* plea); *Hibbler v. Benedetti,* No. 07–cv00467, 2011 WL 2470516, at *3 n. 5 (D.Nev. June 17, 2011) ("Ninth Circuit law confirms that the *Tollett* and *Hill* waiver and bar rules apply to *Alford* or *nolo contendere* pleas to the same extent as unqualified guilty pleas.").

**\*8** Furthermore, given the strong evidence against him-including two knives, statements from the victim and eyewitnesses, and the victim's blood on his clothing-there was a sufficient evidentiary basis for his *Alford* plea. *Alford,* 400 U.S. at 37 (there must be a "strong factual basis for the plea" to withstand scrutiny under *Alford* ). Ture thus cannot prevail on any challenge to his *Alford* plea based on his claim that he cannot be held culpable for the offense.

*Claim 2: Ineffective Assistance of Counsel*

Ture next argues that both his pre-trial counsel and appellate counsel rendered ineffective assistance that warrants habeas relief.

*a. New York and Strickland Standards on Habeas Review*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington,* a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A deficient performance is one in which "counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper,* ——U.S. ——, ——— – ———, 132 S.Ct. 1376, 1385– 86, 182 L.Ed.2d 398 (2012); *Glover v. United States,* 531 U.S. 198, 203–04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *Williams,* 529 U.S. at 393–95. Thus, Ture must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland,* 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness.' *Rosario v. Ercole,* 601 F.3d 118, 123 (2d Cir.2010) (citing *People v. Turner,* 5 N.Y.3d 476, 806 N.Y.S.2d 154, 840 N.E.2d 123 (N.Y.2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento,* 91 N.Y.2d 708, 674 N.Y.S.2d 629, 697 N.E.2d 584, 588 (N.Y.1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento,* 674 N.Y.S.2d 629, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.' " *Id.* (quoting *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400, 405 (N.Y.1981)).

**\*9** The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner,* 806

N.Y.S.2d 154, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario,* 601 F.3d at 124 (citing *People v. Caban,* 5 N.Y.3d 143, 800 N.Y.S.2d 70, 833 N.E.2d 213, 222 (N.Y.2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

*b. Pre–Trial Counsel*

Ture contends that his counsel was ineffective because counsel knew the victim and refused to put forth evidence of the County Court and Jail's negligence in order to demonstrate that Ture was not culpable for his actions. But the *Tollett* bar discussed with regard to claim 1, *supra,* also applies to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.1996). Therefore, any claim that Ture's counsel failed to raise evidence challenging Ture's culpability is similarly barred by Ture's *Alford* plea.

*c. Appellate Counsel*

Ture additionally argues that his appellate counsel was ineffective "because he would not raise these issues of negligence by the County Jail and Saratoga Court as a defense" and "did not use his chance of an oral argument."

Because one of the main functions of appellate counsel is to "winnow[ ] out weaker arguments on appeal," *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, *see Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citation omitted); *accord Barnes,* 463 U.S. at 754. To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on

his appeal." *Smith,* 528 U.S. at 285 (citations omitted). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." *Mayo v. Henderson,* 13 F.3d 528, 534 (2d Cir.1994) (citation and internal quotation marks and brackets omitted).

**\*10** Ture falls far short of meeting these standards. The record indicates that Ture's appellate counsel submitted a well-reasoned and thorough brief arguing that the court should not have accepted Ture's guilty plea in light of the evidence that Ture was not guilty by reason of mental disease or defect. Because Ture had accepted a plea offer and waived his right to appeal, the grounds on which Ture could challenge his conviction were limited. Counsel made the tactical decision to not directly raise the negligence of the County Court and Jail but rather to use those facts to argue that the trial court should have rejected his *Alford* plea and instead adjudicated him not guilty by reason of mental disease or defect. Ture cannot show that appellate counsel's tactical decision was objectively unreasonable, particularly given that, as discussed *supra,* the substances of the claims are substantially identical. Moreover, because Ture's asserted negligence claim is not a jurisdictional or constitutional defense, New York law-like federal law-mandates that Ture forfeited this claim by pleading guilty. *See People v. Parilla,* 8 N.Y.3d 654, 838 N.Y.S.2d 824, 870 N.E.2d 142, 145 (N.Y.2007) (holding that "under a guilty plea, a defendant ... forfeits the right to revive certain claims made prior to the plea" (citation and internal quotation marks omitted)). Thus, Ture cannot demonstrate that the New York Court of Appeal would have found in his favor on this claim even if appellate counsel had directly asserted it.

Ture's assertion that counsel was ineffective for failing to request or participate in oral argument also must fail. Given that appellate counsel drafted a well-reasoned and thorough brief asserting Ture's most viable argument, Ture cannot show that counsel's decision to not partake in oral argument rendered him ineffective. *See, e.g., Vega v. United States,* 261 F.Supp.2d 175, 177 (E.D.N.Y.2003) (denying ineffective assistance of appellate counsel claim where counsel submitted an appellate brief but neglected to request an oral argument because petitioner failed to show that oral argument would have changed the results of his appeal); *see also United States v. Birtle,* 792 F.2d 846, 847–48 (9th Cir.1986) ("The failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fairness of the appellate process as to warrant application of a per

se rule of prejudice."). Accordingly, Ture cannot prevail on any argument asserted in his ineffective assistance of counsel claim.

*Claim 4: Harsh and Excessive Sentence*

Finally, Ture argues that his sentence is excessive for a first-time felon with no prior violent history. Ture was convicted, upon his guilty plea, of attempted murder and first-degree assault, both of which are class B felonies. *See* N.Y. PENAL LAW §§ 110/125.25(1), 120.10(1). New York law mandates that the sentence imposed for these crimes must be at least 5 years and must not exceed 25 years. *Id.* § 70.02(3)(a). The 15–year sentence imposed upon Ture was thus within the statutory range. Ture was also convicted of second-degree assault, a class D felony, for which New York law requires a sentence that is at least 2 years and does not exceed 7 years. *See* N.Y. PENAL LAW §§ 120.05(2), 70.02(3)(c). The court sentenced Ture to 5 years' imprisonment on this conviction. The court also sentenced him to 1 year of imprisonment for the criminal possession of a weapon conviction, the maximum sentence allowed under New York law. *See* N.Y. PENAL LAW §§ 265.01(2), 70.15(1). These sentences were all ordered to run concurrently. The court additionally imposed a 5–year term of post-release supervision for the class B felonies and a 3–year term for the class D felonies. *See* N.Y. PENAL LAW §§ 70.45(2)(e),(f).

**\*11** It is well-settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992); *Bellavia v. Fogg,* 613 F.2d 369, 373 (2d Cir.1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway,* 485 F.Supp.2d 266, 284 (W.D.N.Y.2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Because the sentences imposed were within the statutory range prescribed by New York law, Ture cannot prevail on this claim.

V. CONCLUSION

Ture is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller–El,* 537 U.S. at 327)). Any further

request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R.APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2895439

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  9

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:12cv01864**<br>TURE v. RACETTE | — | N.D.N.Y. | Dec. 20, 2012 | Docket |

**History (3)**

**Direct History (3)**

1. People v. Ture
94 A.D.3d 1163 , N.Y.A.D. 3 Dept. , Apr. 05, 2012

*Leave to Appeal Denied by*

2. People v. Ture
19 N.Y.3d 968 , N.Y. , June 07, 2012

*AND Habeas Corpus Denied by*

3. Ture v. Racette
2014 WL 2895439 , N.D.N.Y. , June 26, 2014

2006 WL 297462
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Toindra RAMDEO, Petitioner,
v.
William PHILLIPS, Superintendent of Green
Haven Correctional Facility, Respondent.

No. 04-CV-1157 (SLT).
|
Feb. 8, 2006.

**Attorneys and Law Firms**

Andrea G. Hirsch, New York, NY, for Petitioner.

James Alaysius Dolan, Queens County District Attorney, Kew Gardens, NY, for Respondent.

*MEMORANDUM AND ORDER*

TOWNES, United States District Judge:

**\*1** In March 2004, petitioner, Toindra Ramdeo, a citizen of Guyana, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1997 murder conviction. Well after oral argument on this petition, but shortly after retaining counsel to assist him with a post-argument submission, petitioner twice moved for permission to amend his petition to add new grounds for granting habeas relief. For the reasons set forth below, petitioner's motions are hereby denied.

BACKGROUND

In April 1997, petitioner was convicted of murder in the second degree under a depraved-indifference theory, N.Y. Penal L. § 125.25(2), and assault in the second degree, N.Y. Penal L. § 120.20(2), based on two separate incidents involving two separate victims. On appeal, petitioner's counsel principally argued that the trial court erred in refusing to suppress petitioner's statement to police and that the evidence was insufficient to support the assault conviction. Appellate counsel did not contest the sufficiency

of the evidence relating to the murder conviction, or argue ineffective assistance of trial counsel.

On September 21, 2000, the Appellate Division, Second Department, modified the judgment of conviction to the extent of vacating petitioner's assault conviction and dismissing that count of the indictment, but affirmed the judgment in all other respects. *People v. Ramdeo,* 277 A.D.2d 258, 719 N.Y.S.2d 252 (2d Dept.2000). The New York Court of Appeals denied leave to appeal on May 10, 2001, *People v. Ramdeo,* 96 N.Y.2d 833, 729 N.Y.S.2d 454, 754 N.E.2d 214 (2001), and, after reconsideration, denied leave a second time on December 17, 2001. *People v. Ramdeo,* 97 N.Y.2d 687, 738 N.Y.S.2d 302, 764 N.E.2d 406 (2001).

On January 24, 2002, petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440 (hereafter, " § 440"), in which he principally argued that his trial counsel had provided ineffective assistance. Petitioner faulted the attorney who represented him prior to trial for (1) failing to assert petitioner's rights under the Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77; (2) failing to adequately prepare for the pre-trial *Huntley* hearing by failing both to investigate and to call any witnesses other than petitioner himself; and (3) failing to adequately prepare petitioner to testify at the hearing and then failing to object to "prejudicial questions." Ramdeo's Affidavit in Support of Motion to Vacate Judgment at 32. Petitioner also faulted the attorney who represented him at trial for (1) failing to interview or to call any witnesses or to pursue a coherent strategy; (2) failing to request that the trial court charge the jury on lesser included offenses, and (3) failing to "bring to light" the violations of petitioner's rights under the Vienna Convention. *Id.* at 42, 738 N.Y.S.2d 302, 764 N.E.2d 406. However, petitioner's § 440 motion did not argue that the evidence was insufficient to sustain his murder conviction or that trial counsel's failure to raise this point constituted ineffective assistance. Petitioner's motion was denied on March 11, 2003. *People v. Ramdeo,* Ind. No. 4521/95, slip op. (Sup.Ct. Queens Co. Mar. 11, 2003).

**\*2** On June 26, 2003, petitioner filed a *pro se* petition for a writ of error coram nobis with the Appellate Division, Second Department, alleging ineffective assistance of appellate counsel. Petitioner asserted, *inter alia,* that appellate counsel had failed to argue that "there [was] no rational basis upon which a jury could have found [him] guilty of depraved mind murder beyond a reasonable doubt." Ramdeo's Affidavit in Support of Motion for a Writ of Error Coram Nobis at 19. The

Appellate Division denied petitioner's application, holding that petitioner had failed to establish that he was denied the effective assistance of appellate counsel. *People v. Ramdeo,* 1 A.D.3d 537, 767 N.Y.S.2d 243 (2d Dept.2003). On February 27, 2004, the New York Court of Appeals denied petitioner leave to appeal this decision. *People v. Ramdeo,* 1 N.Y.3d 633, 777 N.Y.S.2d 31, 808 N.E.2d 1290 (2004).

On March 10, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The form petition, which petitioner completed, directed petitioner to "state every ground on which you claim that you are being held unlawfully" and to "attach a copy of [the] State Court appellate brief" if he was "raising the same grounds ... raised on direct appeal." Petition at 4. Petitioner raised five grounds: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and three grounds regarding the admissibility of petitioner's statement to the police. The petition did not contain a statement of facts or any new arguments in support of these grounds. Indeed, rather than describe the facts supporting his two ineffective assistance claims, petitioner simply referred to pages in his affidavits in support of his § 440 motion and his petition for a writ of error coram nobis, and to pages in his replies to the People's responses to those applications. Pet. at 5.

On October 29, 2004, after the prosecution responded to the petition, and after petitioner filed his reply to that response, this Court heard oral argument on the petition. During that argument, this Court requested that the parties file supplemental submissions relating solely to the question of whether the trial court's determinations concerning the voluntariness of petitioner's statements to the police were entitled to deference in light of *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). *See* Transcript of Oct. 29, 2005, Oral Argument at 4-6.

On December 21, 2004, petitioner retained counsel for the purpose of preparing the supplemental submission requested by the Court. In a submission dated February 25, 2005, petitioner's counsel not only addressed the issue raised at oral argument, but also sought permission to amend the petition to add the argument that "trial counsel was ineffective for failing to argue that the evidence was insufficient to support the charge of depraved-indifference murder." Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated February 25, 2005, at 1. On May 4, 2005, after petitioner's application to amend the petition on this ground had been fully briefed by the parties, petitioner's counsel

requested permission to add yet another, related argument to the petition: "that [petitioner's] conviction should be vacated because he is innocent of depraved-indifference murder." Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated May 4, 2005, at 1.

DISCUSSION

**\*3** Although there is "[a] discrete set of Rules govern[ing] federal habeas proceedings launched by state prisoners" pursuant to 28 U.S.C. § 2254, *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 2569, 162 L.Ed.2d 582 (2005), these rules do not contain any specific provision concerning the amendment of habeas petitions. Rule 11 of Rules Governing Section 2254 Cases in the United States District Courts provides only that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied" to a § 2254 proceeding. Similarly, 28 U.S.C. § 2242 specifically states that a petition for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."

In light of these provisions, courts have held that Federal Rule of Civil Procedure 15-the rule which governs the amendment of civil pleadings-governs applications to amend § 2254 habeas petitions. *See, e.g., Mayle,* 125 S.Ct. at 2569-70; *Littlejohn v. Artuz,* 271 F.3d 360, 362 (2d Cir.2001). Rule 15(a) provides in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, ... within 20 days after it is served.

If a party is no longer entitled to amend his or her pleading as a matter of course, the party may amend "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a).

Rule 15(a) specifically provides that "leave shall be freely given when justice so requires." While "[t]he Supreme Court

has made clear that 'this mandate is to be heeded,' ' *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)), district courts have discretion to deny leave "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," *Ching v. United States,* 298 F.3d 174, 180 (2d Cir.2002), or "where amendment would be futile." *In re Tamoxifen Citrate Antitrust Litig.,* 429 F.3d 370, 404 (2d Cir.2005) (citing *Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 91-92 (2d Cir.2003)). "This discretion safeguards against the possibility that Rule 15's amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ [of habeas corpus]...." *Ching,* 298 F.3d at 180.

Under Rule 15, amendments to a pleading may not be made after the statute of limitations has run unless the amendment relates back to the date of the original pleading. Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of an original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." As the Supreme Court recently noted, relation back under Rule 15(c)(2) "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle,* 125 S.Ct. at 2572 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1259, n. 29 (9 th Cir.1982)). An amended habeas petition, therefore, "does not relate back (and thereby escape [the Antiterrorism and Effective Death Penalty Act's] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.,* 125 S.Ct. at 2566.

**\*4** Although petitioner concedes that his motions to amend were made after the one-year limitation period expired, Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated April 11, 2004, at 2, petitioner persuasively argues that the facts underlying the proposed amendments are the same as the facts underlying one of petitioner's five grounds for granting a writ of habeas corpus. The fifth ground raised in the original petition asserts that appellate counsel was ineffective for the reasons set forth in petitioner's application for a writ of error coram nobis. Pet. at 5. In that application, petitioner argued that appellate counsel had failed to argue that "there [was] no rational basis upon which a jury could have found [petitioner] guilty of depraved mind murder beyond a reasonable doubt." Ramdeo's Affidavit in Support

of Motion for a Writ of Error Coram Nobis at 19. Petitioner specifically argued that "all the evidence ... indicated that, if anything, the deceased was intentionally murdered," and cited to a case-*People v. Sanchez,* 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204 (2002)-in which the appellant, who had been convicted of depraved indifference murder, had argued (albeit unsuccessfully) "that the People's proof was consistent only with an intentional killing." *Id.,* 98 N.Y.2d at 376, 748 N.Y.S.2d at 313, 777 N.E.2d 204.

The facts which support the two grounds which petitioner seeks to add are at least of a type similar to the facts which underlie the fifth ground in the original petition. Accordingly, this Court finds that the proposed amendments relate back to the date of the original pleading. Petitioner is not, therefore, time-barred from amending his petition in these two respects.

Nonetheless, this Court concludes, in the exercise of its discretion, that it would be futile to permit petitioner to amend his petition. Petitioner concedes that the two grounds which he seeks to add to the petition are not yet exhausted. Writs of habeas corpus cannot be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Moreover, "federal district courts may not adjudicate ... petitions containing both exhausted and unexhausted claims." *Rhines v. Weber,* 544 U.S. 269, ----, 125 S.Ct. 1528, 1532-33, 161 L.Ed.2d 440 (2005) (citing *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

"The mere fact that claims are unexhausted does not make them futile," so long as a petitioner can obtain a stay of the habeas proceedings while he exhausts those claims. *Bryant v. Greiner,* No. 02 Civ. 6121(RMB)(RLE), 2005 WL 3455789, at \*1 (S.D.N.Y. Dec. 14, 2005) (report and recommendation) (citing *Clancy v. Phillips,* No. 04-CV-4343 (KMK), 2005 WL 1560485 (S.D.N.Y. July 1, 2005)). However, if this Court is not prepared to grant petitioner a stay pending his exhaustion of these two claims, it would be futile to grant leave to amend the petition. The Court would be permitting the petitioner to amend, then forcing petitioner to choose between abandoning the newly added grounds or having the mixed petition dismissed altogether.

**\*5** Until recently, stays of the sort that petitioner seeks were routinely granted in this Circuit pursuant to *Zarvela v. Artuz,* 254 F.3d 374, 481 (2d Cir.2001). However, on March 30, 2005, in *Rhines v. Weber, supra,* the Supreme Court imposed new restrictions with respect to the use of the "stay and abeyance" procedure. While the Supreme Court

held that district courts have discretion to grant stays, it also held that "stay and abeyance should be available only in limited circumstances." *Id.,* 125 S.Ct. at 1535. Specifically, the Supreme Court held that a stay should be granted only if a petitioner can show "good cause" for failing to exhaust all available State remedies earlier. *Id.*

The *Rhines* Court did not define the term, "good cause." In the ten months since *Rhines* was decided, the Supreme Court has addressed the issue of what constitutes "good cause" only once. In *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), the petitioner had his habeas petition dismissed as time-barred after the Third Circuit ruled that his untimely filed State post-conviction petition was not a "properly filed application for State post-conviction or other collateral review," and therefore did not toll the AEDPA's limitation period under 28 U.S.C. § 2244(d)(2). In affirming the Third Circuit, the Supreme Court addressed the petitioner's claim that a petitioner "trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never properly filed, and thus that his federal habeas petition is time barred." *Id.* at 1813 (internal quotation marks and citation to record omitted). The Supreme Court stated:

A prisoner seeking state postconviction relief might avoid this predicament ... by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See Rhines v. Weber, ...* 125 S.Ct. [at] 1531.... A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. *Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

*Id.* at 1813-14.

No Circuit Court of Appeals has yet opined on the meaning of "good cause." However, the majority of those lower courts which have addressed the issue at length have analogized the "good cause" requirement to the requirement that a habeas petitioner demonstrate "cause" to excuse other types of procedural defaults. *See, e.g., Hernandez v. Sullivan,* 397 F.Supp.2d 1205, 1206-07 (C.D.Cal.2005) (deeming it "appropriate to look to procedural default case law for guidance in determining whether Petitioner has

demonstrated the requisite 'good cause' "); *Johnson v. Sullivan,* No. CV04-7923 (ABC)(MLG), 2006 WL 37037, at *3 (C.D.Cal. Jan. 4, 2006) (report and recommendation following *Hernandez* ); *Pierce v. Hurley,* No. 05-CV-392, 2006 WL 143717, at *8 (S.D.Ohio Jan.18, 2006) (report and recommendation following *Hernandez* ); *Carter v. Friel,* No. 02 CV 326 TS, 2006 WL 208872, at *3 (D.Utah Jan.26, 2006) (disagreeing "with the position that 'good cause' is defined by the Supreme Court in *Rhines* as more liberal or expansive than the showing needed for 'cause' to excuse procedural default in federal habeas case law"). These courts have reasoned that "good cause," like "cause" in the procedural default context, must arise "from an objective factor external to the petitioner which cannot fairly be attributed to him or her." *See, e.g., Hernandez,* 397 F.Supp.2d at 1207 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Johnson,* 2006 WL 37037, at *3 (same); *Pierce,* 2006 WL 143717, at *8 (same).

**\*6** Even in cases which expressly reject the notion that "good cause" is analogous to "cause" for a procedural default, *see Rhines v. Weber,* No. 00-5020-KES, 2005 WL 3466015, at *4 (D.S.D. Dec.19, 2005), or which implicitly reject *Hernandez* and progeny by discussing and failing to follow those cases, *see Fernandez v. Artuz,* No. 00 Civ. 7601(KMW) (AJP), 2006 WL 121943 (S.D.N.Y. Jan. 18, 2006) (report and recommendation of Peck, M.J.), the "good cause" has arisen from external factors, not petitioner's own decisions. For example, *Rhines,* 2005 WL 3466015, is one of several cases holding that the alleged ineffective assistance of counsel at post-conviction proceedings can constitute "good cause." *Id.* at *3 (citing cases, including *Ramchair v. Conway,* No. 04-CV-4241 (JG), 2005 WL 2786975 (E.D.N.Y. Oct.26, 2005)). Similarly, in *Fernandez,* 2006 WL 121943, the Court found "good cause" where a petitioner was forced to seek a stay only because his § 440 motion-itself based on newly discovered evidence-had been greatly delayed "by the prosecution and other circumstances beyond [petitioner's] control." *Id.* at *7.

Thus, regardless of whether courts analogize "good cause" to "cause" for procedural defaults, most of the courts which have thus far engaged in an in-depth analysis of the issue have required that "good cause" arise from something external, and not fairly attributable, to the petitioner. Indeed, at least one case in this Circuit has expressly held that a petitioner's own tactical decisions cannot constitute good cause. In *Knight v. Phillips,* Nos. 05-CV-2749 (NG) and 05-CV-2758 (NG), slip op. (Jan. 18, 2006), the petitioner deliberately waited for 13 months before filing his State post-conviction motions

because a prison law clerk had promised to assist him. The *Knight* Court recognized that the delay was due to "reasons beyond [the petitioner's] control," but nonetheless held that the petitioner's tactical decision to wait for legal assistance did not "constitute 'good cause' for petitioner's failure to file his State claims earlier." *Id.* at 3. The Court observed:

Such a broad construction of the term 'good cause' would greatly undermine the AEDPA's 'twin purposes' by 'allowing ... petitioner to delay the resolution of the federal proceedings' and by 'decreasing ... petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition[s]."

*Id.* (quoting *Rhines,* 125 S.Ct. at 1534).

In this case, petitioner essentially argues that a *pro se* petitioner's inadvertent failure to exhaust an issue in State court should be sufficient to constitute "good cause." Petitioner observes that three justices-Stevens, Ginsburg and Breyer, JJ.-who concurred in the majority opinion in *Rhines* did so "on the understanding that ... 'good cause' ... is not intended to impose the sort of strict and inflexible requirement that would trap the unwary *pro se* prisoner." *Rhines,* 125 S.Ct. at 1536 (internal quotations and citations omitted). Petitioner further notes that he raised the legal insufficiency claim in his application for a writ of error coram nobis, and did not raise it in his prior § 440 motion only because, as a *pro se* litigant, he failed to appreciate "that his trial lawyer had erred in not sufficiently setting out his objection." Letter from Andrea G. Hirsch, Esq., to Hon. Sandra L. Townes, dated April 11, 2005, at 6-7.

 **\*7**  However, petitioner does not allege, or even suggest, that there exists an external cause for his delay in exhausting the claims he now seeks to raise. Rather, he tacitly admits that the failure to exhaust is attributable to his own ignorance of the law, and was therefore inadvertent and entirely in good faith.

In light of the authorities discussed above, this Court is compelled to conclude that the petitioner's showing is insufficient to make out "good cause." If this Court were to adopt petitioner's argument, it would essentially endorse

a standard which would eviscerate *Rhines* and undermine one of the AEDPA's "twin purposes" by greatly "decreasing a *pro se* petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Petitioner's argument ignores the fact that Justices Ginsburg and Breyer not only joined in Justice Stewart's concurrence, but also joined in Justice Souter's concurring opinion urging that the Court not condition a stay-and-abeyance order on a showing of " 'good cause' for delay," but rather "simply hold the order unavailable on a demonstration of 'intentionally dilatory litigation tactics.' " *Rhines,* 125 S.Ct. at 1536. That approach was rejected by the *Rhines* majority, which thereby implied that merely showing that the failure to exhaust was due to a petitioner's inadvertent, good-faith omission would be insufficient to obtain a stay. Since most habeas petitions are filed by *pro se* litigants, adoption of an "inadvertent, good-faith omission" standard would drive an enormous hole through *Rhines* and the AEDPA. Much as this Court sympathizes with petitioner's plight, the principles of *stare decisis* and adherence to legislative intent militate against adopting such a broad definition of "good cause."

Since this Court finds that petitioner has not demonstrated "good cause" for granting a stay of the instant habeas proceedings, it would be futile to grant him leave to amend his petition to add two unexhausted claims. Accordingly, this Court, in the exercise of its discretion, denies petitioner's motions to amend his habeas petition to add new grounds for granting habeas relief.

CONCLUSION

For the reasons stated above, petitioner's motions to amend his petition for a writ of habeas corpus are DENIED.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 297462

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 1:04cv01157**<br>RAMDEO v. PHILLIPS | — | E.D.N.Y. | Mar. 17, 2004 | Docket |

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (10)**

**Direct History (1)**

1. Ramdeo v. Phillips
   2006 WL 297462 , E.D.N.Y. , Feb. 08, 2006

**Related References (9)**

2. People v. Ramdeo
   277 A.D.2d 258 , N.Y.A.D. 2 Dept. , Nov. 06, 2000

   *Leave to Appeal Denied by*

3. People v. Ramdeo
   96 N.Y.2d 833 , N.Y. , May 10, 2001

   *On Reconsideration*

4. People v. Ramdeo
   97 N.Y.2d 687 , N.Y. , Dec. 17, 2001

5. People v. Ramdeo
   277 A.D.2d 258 , N.Y.A.D. 2 Dept. , Nov. 06, 2000

   *Leave to Appeal Denied by*

6. People v. Ramdeo
   97 N.Y.2d 687 , N.Y. , Dec. 17, 2001

   *AND Error Coram Nobis Denied by*

7. People v. Ramdeo
   1 A.D.3d 537 , N.Y.A.D. 2 Dept. , Nov. 17, 2003

   *Leave to Appeal Denied by*

8. People v. Ramdeo
   1 N.Y.3d 633 , N.Y. , Feb. 27, 2004

9.  People v. Ramdeo
277 A.D.2d 258 , N.Y.A.D. 2 Dept. , Nov. 06, 2000


*Habeas Corpus Denied by*


10.  Ramdeo v. Phillips
2007 WL 1989469 , E.D.N.Y. , July 09, 2007

WESTLAW     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-01491-DNH-MJK    Document 16    Filed 10/24/25    Page 46 of 49
Perkins v. LaValley, Not Reported in F.Supp.2d (2012)

2012 WL 1948773

2012 WL 1948773
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Anthony PERKINS, Petitioner,
v.
Thomas LaVALLEY, Respondent.

No. 11 Civ. 3855(JGK).
|
May 30, 2012.

### MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge.

**\*1** The petitioner has moved for a stay of his petition for habeas corpus so that he may exhaust various claims in state court.

The Court may stay a habeas petition to allow for exhaustion of claims in state court if the petitioner can demonstrate that: (1) good cause exists for failing to exhaust the claims previously, (2) the claims are potentially meritorious, and (3) the petitioner did not intentionally engage in dilatory litigation tactics. See Rhines v. Weber, 544 U.S. 269, 277–78 (2005); Vasquez v. Parrott, 397 F.Supp.2d 452, 464 (S.D.N.Y.2005).

Shortly after the motion for a stay was filed, the petitioner sent to the Court a recently-filed state court petition, pursuant to New York Criminal Procedure Law § 440.10 (the " § 440.10 Petition"), to vacate the state criminal conviction that is the subject of his original petition before this Court. The § 440.10 Petition contains the following claims: (1) that the prosecutor knowingly allowed false testimony at the petitioner's 2007 trial; (2) that the prosecutor withheld exculpatory evidence the disclosure of which was required pursuant to Brady v. Maryland, 373 U.S. 83 (1963); and (3) that the petitioner received ineffective assistance of counsel. See Petition Pursuant to N.Y.Crim. Proc. Law § 440 .10, Perkins v. LaValley, No. 11 Civ. 3855, ECF No. 30 (S.D.N.Y. Feb. 7, 2012) (" § 440.10 Petition"), at 10, 13, 18. The petitioner seeks to exhaust these claims in state Court before proceeding with his petition. See Motion for a Stay, Perkins v. LaValley, No. 11 Civ. 3855, ECF No. 27 (S.D.N.Y. Feb. 3, 2012). The original petition before this Court raised different

claims, namely, (1) that the verdict was against the weight of the evidence; (2) that the consent to search the petitioner's home was invalid and that critical evidence therefore should have been suppressed; (3) that the state did not prove the physical injury element of the crime of robbery by legally sufficient evidence; and (4) that the sentence was excessive.

Under *Rhines,* it is the petitioner who has the burden of demonstrating "good cause" for his failure to exhaust previously any unexhausted claims. See, e.g., Ayuso v. LaValley, No. 12 Civ. 0932, 2012 WL 1531036, at \*1 (E.D.N.Y. May 1, 2012). The "good cause" requirement "is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary *pro se* prisoner.' " Rhines, 544 U.S. at 279 (Stevens, J., concurring) (quoting Rose v. Lundy, 455 U.S. 509, 520 (1982)). The good cause requirement is not met in this case.

In this case, the petitioner has offered no explanation for his failure to exhaust (or even to raise) the claims asserted in the § 440.10 Petition prior to the time that he filed the original petition in this case. While the petitioner argues that the prosecutor's alleged misrepresentation that all *Brady* material had been turned over constitutes "good cause" in this case, he does not explain when he had notice of the alleged *Brady* violation, or his counsel's alleged ineffective assistance, and whether he had such notice prior to the time he filed his original petition. In any event, the new arguments raised in the § 440.10 Petition would be barred in this Court even if they were exhausted, because they were first raised over a year after the petitioner's state conviction became final in August, 2010, see 28 U.S.C. § 2244(d)(1)(A), and because neither the petitioner nor the record indicates how the new claims relate back to the claims raised in the original petition. [1]

[1]    The Supreme Court explained in *Pace* that, where a petitioner is concerned about the one year statute of limitations, the proper procedure is to file a "protective" petition for habeas corpus in federal court within the statute of limitations, and then request a stay and abeyance while any unexhausted claims are exhausted. See Pace v. DiGuglielmo, 544 U.S. 408, 416–17 (2005). In this case, the § 440.10 Petition containing wholly new and unexhausted claims was filed after the respondent moved to dismiss the original petition, and after the motion for a stay. The original petition in this case cannot be considered "protective" of unexhausted claims that are unrelated to claims raised either

in previous state proceedings, or in the original federal petition.

**\*2**  The petition in this case was filed in May, 2011, and the respondent responded to the petition in October, 2011. While the petitioner asserts, and the respondent does not dispute, that the petitioner has not intentionally engaged in dilatory litigation tactics, the Court has granted numerous extensions of time for the petitioner to file his reply to the respondent's opposition to the petition. A stay would unnecessarily delay a decision on the original petition, particularly where, as here, the stay is sought in order to exhaust claims that are time-barred and not reviewable by this Court. A stay under Rhines is only appropriate in "limited circumstances," because "[s]tay and abeyance, if employed too frequently, has the potential to undermine the [ ] twin purposes" of finality and streamlined review embodied by the federal habeas statute. *See Rhines,* 544 U.S. at 276–77. In this case, those limited circumstances do not exist.

**Accordingly,** the motion for a stay of the petition is **denied.**

The petitioner should reply to the respondent's opposition to the petition by **June 25, 2012.** In his reply, the petitioner may request that the Court delete any claims that he concedes are unexhausted and consider only exhausted claims. *See Rhines,* 544 U.S. at 278. The petitioner need not file a request to amend the petition for this purpose. If the petitioner does not make such a request, the Court will consider the arguments with respect to the allegedly exhausted claims in the original petition when the petition is fully briefed.

### CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent not specifically addressed above, they are either moot or without merit. For the reasons stated above, the petitioner's motion to stay the petition is **denied.**

**The Clerk is directed to close Docket No. 30.**

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1948773

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:11cv03855**<br>PERKINS v. LAVALLEY | — | S.D.N.Y. | May 23, 2011 | Docket |

**History (5)**

**Direct History (1)**

1. Perkins v. LaValley
   2012 WL 1948773 , S.D.N.Y. , May 30, 2012

**Related References (4)**

2. People v. Perkins
   68 A.D.3d 494 , N.Y.A.D. 1 Dept. , Dec. 10, 2009

   *Leave to Appeal Denied by*

3. People v. Perkins
   14 N.Y.3d 891 , N.Y. , May 26, 2010

   *AND Habeas Corpus Denied by*

4. Perkins v. LaValley
   2013 WL 498734 , S.D.N.Y. , Feb. 11, 2013 , appeal dismissed 2nd Cir. 13-968 ( Jun 12, 3013 )

5. Perkins v. Lavalley
   2011 WL 4063604 , S.D.N.Y. , Aug. 12, 2011